***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications. Therefore, the Opinion and Award of Deputy Commissioner Jones is hereby MODIFIED and AFFIRMED.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the Deputy Commissioner hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly self-insured.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on June 17, 1999.
5. Defendant accepted this claim and continues to pay temporary total disability benefits at the maximum compensation rate for 1999 of $560.00 per week. Defendant has also paid medical expenses arising out of plaintiff's compensable injury by accident.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
7. Industrial Commission forms and filings relating to this case were stipulated into evidence as Stipulated Exhibit 2.
8. The issues before the Commission are: (i) whether plaintiff is permanently and totally disabled; (ii) whether plaintiff should be compelled to cooperate with vocational rehabilitation; and (iii) whether Dr. Thomas Rennard should be authorized as plaintiff's treating physician.
 ***********
Based upon all the competent evidence and stipulations of the parties, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 57 years old and has a tenth grade education. He had worked as a truck driver for 30 years, the last 15 years driving for defendant-employer.
2. Prior to the injury by accident which is the subject of this case, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer when he was involved in an automobile accident resulting in low back injuries on June 26, 1998.
3. As the result of these injuries, plaintiff underwent L5-S1 fusion surgery performed by Dr. Seyed Emadian.
4. Dr. Emadian assigned plaintiff a 10% percent permanent partial disability rating to his lower back. In June 1998, Dr. Emadian released plaintiff to return to full duty without restrictions.
5. Defendant accepted this as a compensable injury by accident by filing a Form 21 on June 11, 1998. Plaintiff was out of work from January 26, 1998 until June 17, 1998 and received temporary total disability benefits at the maximum compensation rate for 1998 of $532.00 per week based on an average weekly wage of $1,115.26. Plaintiff was also paid 30 weeks of benefits for the 10% percent permanent functional impairment to his back.
6. Plaintiff returned to work for defendant and worked for over a year until June 17, 1999, when plaintiff was involved in another motor vehicle accident that occurred in Kinston, Tennessee. Plaintiff was originally treated at Roane Medical Center in Harriman, Tennessee where he complained of low back and cervical pain. Plaintiff was diagnosed with neck and low back strain and released.
7. Defendant accepted the June 17, 1999 injury to plaintiff's neck, right shoulder and low back and paid temporary total disability compensation at the maximum compensation rate for 1999 of $560.00 per week based on an average weekly wage of $1,091.10.
8. On June 18, 1999, plaintiff was evaluated by defendant's occupational health physician, Dr. Jack Spies. Plaintiff indicated to Dr. Spies that he had pain in his neck, thoracic and lumbar area. Dr. Spies determined plaintiff's complaints of pain were related to spasms and released him to return to work with no prolonged sitting, standing, walking, avoiding frequent bending and no driving until re-examination on June 25, 1999.
9. On June 25, 1999, plaintiff returned to Dr. Spies complaining of pain in his neck and back. Dr. Spies indicated plaintiff suffered from pain in those areas and recommended physical therapy for three weeks.
10. The physical therapy did not provide improvement to plaintiff's condition.
11. When plaintiff returned to Dr. Spies on July 2, 1999, plaintiff requested a referral to a neurosurgeon but this request was denied. Plaintiff continued physical therapy until re-examination by Dr. Spies on July 3, 1999 at which time plaintiff was referred to Dr. Keith Maxwell for a surgical evaluation.
12. On August 13, 1999, Dr. Maxwell evaluated plaintiff and reported there was no evidence of increased root tension or impaired nerve conduction. Dr. Maxwell did not feel an MRI was necessary and referred plaintiff to Dr. Andrew Rudins, a specialist in physical medicine and rehabilitation, for continued physical therapy.
13. Dr. Rudins continued to prescribe physical therapy and medications. Plaintiff underwent an MRI scan at the end of September 1999 which revealed a right lateral recurrent disc herniation at L5-S1 with degenerative changes at L4-L5. The MRI also indicated disc spurring on the left at C3-4 and a neuroforaminal disc protrusion at C4-5 and C5-6.
14. In September 1999, plaintiff unsuccessfully attempted to return to work at part-time light duty. After his unsuccessful attempt to return to work, plaintiff's benefits were re-instated by defendant.
15. On October 27, 1999, plaintiff was seen by Dr. Seyed Emadian who had previously performed his low back fusion and released him to return to work without restrictions in 1998. Upon examination, Dr. Emadian determined plaintiff's range of motion in his low back was profoundly limited on lateral bending and turning. Dr. Emadian indicated plaintiff was suffering from two principal problems, cervicalgia in the right upper extremity radiculopathy and back pain caused by L5-S1 disc as indicated in the MRI scan.
16. Dr. Emadian discussed with plaintiff that he should consider changing his occupation or choosing retirement based upon his physical circumstances.
17. Dr. Emadian referred plaintiff to Dr. Cleveland Thompson for a surgical epidural block. Dr. Thompson treated plaintiff in January 2000. Plaintiff complained of constant burning, aching and headaches as a result of the treatment and condition. Dr. Thompson prescribed medication in an effort to deal with plaintiff's pain.
18. Plaintiff underwent a functional capacity evaluation on January 31, 2000 at the recommendation of Dr. Rudins. This FCE indicated plaintiff was capable of doing light-duty work except overhead. The report indicated plaintiff could sit, stand or walk for approximately 30 minutes but needed to change positions approximately every 30 minutes in order to relieve discomfort.
19. On February 7, 2000, Dr. Rudins rated plaintiff as having a permanent functional impairment of 19% to the spine, which included the cervical spine and low back. Dr. Rudins released plaintiff from his care, giving him permanent work restrictions of lifting 40 pounds occasionally, 15 pounds frequently and 5 pounds constantly and no bending, twisting, prolonged standing or sitting or any truck driving.
20. As of the visit on February 7, 2000, Dr. Rudins had reviewed a job description for a driving instructor and felt that plaintiff was physically capable of performing this work. Dr. Rudins indicated he felt plaintiff might be able to perform jobs that would require driving thirty minutes at a maximum.
21. On February 8, 2000, plaintiff was re-examined by Dr. Thompson and his diagnosis remained unchanged.
22. On April 4, 2000, plaintiff underwent a cervical epidural steroid injection at C6-7 level. Dr. Thompson evaluated plaintiff after the injection and indicated the injection only provided approximately 25% relief.
23. Plaintiff followed-up with his primary care physician, Dr. Thomas Rennard, a specialist in internal medicine. Dr. Rennard has treated plaintiff on an ongoing basis since August 1999 and indicated plaintiff has had continued complaints of neck and back pain with periods of improvement and also periods of aggravation.
24. Dr. Rennard consulted with Dr. Emadian, who subsequently discontinued his medical practice in Asheville. Dr. Emadian indicated he did not think plaintiff was capable of returning to work or performing work over a long period of time.
25. Dr. Rennard noted that increased physical activity caused an increase in plaintiff's pain. He further noted that the Oxycontin plaintiff takes for pain relief can cause side effects of sedation and impairment of ability to drive. Dr. Rennard did not believe that plaintiff could drive a tractor-trailer. Based upon his long-term treatment of plaintiff, Dr. Rennard believes plaintiff is permanently and totally disabled.
26. Plaintiff was hospitalized from March 24, 2001 until March 26, 2001 for neck pain related to his June 1999 compensable injury.
27. On August 1, 2001, Dr. Rennard indicated in a letter to plaintiff's vocational counselor, Melanie Marshall, that plaintiff was not capable of returning to work, given his educational background. However, in his deposition Dr. Rennard stated that he was willing to review a job description if the vocational rehabilitation counselor was able to find a position with minimal type restrictions. Dr. Rennard further explained:
 "You know, the concept of vocational rehabilitation sounds great. But I think part of the difficulty in this process has been one of an antagonistic relationship between the vocational rehabilitation people, ABF and Mr. Lynch. And this has been part of the difficulty as we go along. If there is harassment, if there is, you know, perceived harassment that is going on in that process, I think that's detrimental to all parties."
28. On February 13, 2002, Dr. Rudins indicated plaintiff was not able to return to work, based on a combination of the compensable injury, the physical symptoms caused by it and the psychological issues in terms of plaintiff's ability to deal with pain.
29. Melanie Marshall, vocational rehabilitation consultant, worked with plaintiff for two and one half years. She had contact with plaintiff every few months and admitted that during the two and one half years she made only 10 in-person contacts with employers, or one every three months. Ms. Marshall also made only one hundred employer telephone contacts, or less than one per week, during the time period. While Ms. Marshall indicated that she could possibly find work for plaintiff, plaintiff's educational background and prior work experience as well as his physical limitations and the opinions of his physicians indicate return to work is highly unlikely. Ms. Marshall performed no educational testing on plaintiff, despite her knowledge that he had a tenth-grade education.
30. As the result of the compensable injury by accident, plaintiff is totally disabled from any employment and should continue to receive total disability compensation until further order from this Commission.
31. Plaintiff should remain under the care of Dr. Rennard in order to deal with his pain.
32. Plaintiff may benefit from reasonable vocational rehabilitation efforts provided by defendant. However, in light of the problems between plaintiff and Ms. Marshall, defendant shall assign a different rehabilitation counselor to assist plaintiff in his rehabilitation efforts. Any possible employment position located by the counselor shall be reviewed by Dr. Rennard to determine whether it is suitable employment within plaintiff's permanent work restrictions.
 ***********
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained compensable injuries by accident on January 26, 1998 and June 17, 1999 arising out of and in the course of his employment with defendant-employer. Plaintiff sustained injuries to his low back, neck and right shoulder. N.C. Gen. Stat. § 97-2(6).
2. As result of his compensable injuries by accident, plaintiff has received temporary total disability compensation on a continuing basis to the present. N.C. Gen. Stat. § 97-29.
3. Plaintiff received medical treatment for his compensable injury by accident on June 17, 1999 from Drs. Jack Spies, Keith Maxwell, Andrew Rudins, Seyed Emadian, and Thomas Rennard. Plaintiff shall continue to receive necessary treatment from these physicians. Dr. Rennard is designated as plaintiff's primary treating physician. N.C. Gen. Stat. § 97-25.
4. Plaintiff shall continue to receive total disability compensation at the rate of $560.00 per week until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff may benefit from further reasonable vocational rehabilitation. However, defendant shall assign a different vocational rehabilitation counselor. Any legitimate job offers should be presented to Dr. Rennard for his review and approval. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff shall continue to receive total disability compensation at a rate of $560.00 per week until further Order of the Commission, subject to an attorney's fee which is approved in Paragraph 4.
2. Defendant shall continue to pay medical expenses resulting from plaintiff's compensable injuries by accident on January 26, 1998 and June 17, 1999. Plaintiff's primary treating physician shall be Dr. Thomas Rennard.
3. Plaintiff shall participate in reasonable vocational rehabilitation efforts provided by a rehabilitation counselor other than Ms. Marshall that shall be assigned to plaintiff's case by defendant. Any possible job offers shall be presented to Dr. Rennard for his evaluation and approval.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel. This amount shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel. Plaintiff's counsel should receive the equivalent of every fourth check.
5. Defendant shall pay the costs.
This the ___ day of August, 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER